45 U.S. 55
 4 How. 55
 11 L.Ed. 873
 THOMAS MANEY, AND OTHERS, PLAINTIFFS IN ERROR,
v.
THOMAS J. PORTER, DEFENDANT.
 January Term, 1846
 
 THIS case was brought up by writ of error to the Supreme Court of Errors and Appeals for the State of Tennessee, under the 25th section of the Judiciary Act.
 The case was this. Thomas Maney, one of the plaintiffs in error, on the 4th of October, 1836, gave his note to the defendant in error, for $5,000, payable eight months after date. Suit was afterwards brought on this note, and judgment recovered in the State Circuit Court, from which Maney appealed to the Supreme Court of Errors and Appeals where the judgment was affirmed against him.
 He then filed his bill in the Chancery Court, and obtained an injunction. The defendant in error answered, and upon the hearing, the injunction was dissolved and the bill dismissed; and this decree was affirmed in the Supreme Court of Errors and Appeals against the said Maney and the other plaintiffs in error, who were his securities in the appeal bond. It is from the last mentioned decree that the present writ of error was brought.
 In order to understand the character of the controversy in the State court, and the points in issue between parties, it is proper to state that by the 14th article of the treaty with the Choctaw Indians, made at Dancing Rabbit Creek on the 27th of September, 1830, it was stipulated that each Choctaw head of a family, being desirous to remain and become a citizen of the States, should be permitted to do so by signifying his intention to the agent of the United States within six months from the ratification of the treaty; and should thereupon become entitled to a reservation of one section of 640 acres, to be bounded by sectional lines,—one half that quantity for each unmarried child living with him over ten years of age,—and a quarter section for each child under ten; to adjoin the location of the parent. And if they resided on such land intending to become citizens five years after the ratification of the treaty, a grant in fee simple was to issue; the reservation to include the improvement held by the head of the family at the time of the treaty, or a portion of it.
 The bill filed by Maney stated, that in December, 1835, the defendant informed him that many Indians had within the time prescribed signified to the agent of the government their intention to remain under the above article of the treaty, whose names he had neglected to register and certify; and that in consequence of his neglect, the lands to which they were, entitled, with the improvements, had in many instances been sold, and had passed into the possession of the purchaser; and those who still retained possession of their reservation had become much alarmed; that Gwinn and Fisher had undertaken to secure these reservations to the Indians entitled, or to obtain for them an equivalent; and had made contracts by which the Indians were to give them one half (and in some cases more), if they succeeded; that Gwinn and Fisher had employed the defendant in error to assist them in the business; that he held their obligation for twenty-five sections of these claims; that he had no doubt of success; that the matter had already been before Congress, and it had been ascertained that a majority of both Houses were in favor of it; that he was confident a law would pass authorizing commissioners to be appointed to investigate and decide upon these claims, and that the reservations would be made good to the persons entitled; and that if Congress did not pass the law, the rights could be enforced in the courts of justice; that the defendant in error represented these Indian claims as of great value, and said that they had been already located on good lands, which were worth ten dollars per acre, and proposed, as a matter of favor, to sell a portion of his interest to Maney; and that he (Maney), having himself no knowledge upon the subject, and relying altogether on the statements of the defendant in error, purchased from him one undivided half part of his claim to the twenty-five sections above mentioned for $10,000; and thereupon gave two notes of $5,000 each for the purchase money, and received from the defendant a covenant to convey.
 The bill further stated, that for reasons therein set forth the complainant became dissatisfied with his purchase, and thought he had been deceived; and in March, 1836, he applied to the defendant to rescind it, who refused; but that afterwards, in October, 1836, he agreed to take back the one half of these claims; and thereupon the two notes before mentioned were cancelled, and the note on which the judgment was rendered was given by Maney, and a covenant made by the defendant to convey, according to this contract; that at the time the last mentioned agreement was made, as well as before, the defendant had agreed that he would take back the lands and rescind the whole contract if the complainant desired it, in case Congress should pass a law authorizing a commission to examine into and decide upon these claims; that he and Gwinn and Fisher would continue their exertions to secure the titles, and that a law authorizing a commission to inquire into their validity would place them beyond reasonable doubt.
 The bill further states, that the law proposed was passed by Congress; but that the defendant had refused to rescind the contract, and had not continued to give his attention to the business as he promised; that he had sold out the residue of his interest; that Gwinn and Fisher, as the complainant understood, had likewise sold out their interest, or nearly all of it; that none of the claims had been secured, and the complainant did not think it probable that they would be obtained by the assignees of the Indians; that he had never received any thing in land or money, and apprehended that he never would; and prayed an injunction to restrain the defendant in error from suing out execution on the judgment at law, and that the contract might be rescinded and set aside.
 This is the substance of the bill, which is a very long one, going into much detail, and stating conversations which Maney alleges he held with the defendant in error, and with others, upon the subject; but which it is unnecessary to set out at length, as they are not material to the point upon which the case was disposed of in the Supreme Court.
 The defendant put in his answer, denying and putting in issue all the material allegations in the bill; and it was upon this bill and answer, and the proofs taken upon the matters thus in issue, that the decree was made upon which this writ of error is brought.
 The case was argued by Mr. Brinley for the plaintiffs in error; and by the Attorney-General, for the defendant.
 As the decision of the court rested entirely on the question of jurisdiction, all those parts of the argument which involved the merits of the case are omitted in the report.
 Mr. Brinley rested his argument in favor of the jurisdiction of the court upon the proposition that the contracts of the Indians were held to be valid because they had a right or authority to make them under the State laws of 1829 and 1830; and that the authority exercised under those laws was repugnant to the treaty of 1830, and to the laws of the United States; and that the decision of the State court was in favor of the authority thus set up.
 Mr. Mason, Attorney-General, contended that the facts in this case were not sufficient to sustain jurisdiction.
 Mr. Chief-Justice TANEY delivered the opinion of the court.
 
 
 1
 Upon examining the bill in this case, it is not easy to determine, from the loose manner in which it is drawn, whether the complainant claimed the relief he asked for on the ground that the representations made to him by the defendant were false and fraudulent; or on the ground that the consideration for which the note was given had failed, because the defendant was unable to convey him a title to the Indian reservations.
 
 
 2
 It is evident, however, that the suit was not brought to uphold any title or right which the complainant claimed under the Choctaw treaty, or under the law of Congress which he states to have been passed upon the subject. For he does not ask for a conveyance of the reservations, nor of the Indian title to them. And he does not even aver that these claims are valid, or that he has any title to them; but, on the contrary, charges that none of the claims had been secured, and states that he did not think it probable that they would be obtained by the assignees of the Indians. And as the case has been removed here from the decision of a state court, we have no right to review it unless the complainant claimed some right under the treaty with the Choctaws or the act of Congress, and the decision of the state court had been against the right, title, or privilege specially set up by him; and even in that case, the power of revision given to this court extends no further than to the particular question thus raised and decided against the party. In the case before us, no such title, right, or privilege was claimed by the bill, and of course no decision was made against it in the state court. We therefore can exercise no jurisdiction in the case, and are not authorized to examine any questions of fraud or failure of consideration, or breach of contract, which the bill may be supposed to present, and upon which the court of the State of Tennessee may now decide.
 
 
 3
 Upon referring to the reports of this court, it will be seen that the 25th section of the act of Congress of 1789, under which this writ of error is brought, has been often the subject of examination and comment in this court, and the construction of the section and the practice under it well settled by many decisions. It is unnecessary to repeat here what the court have said upon former occasions. It is very clear, that this case is not within the provisions of the section, and the writ of error must therefore be dismissed for want of jurisdiction.